IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:15-CV-95-F

| | | |
|---|---|---|
| SHERIF A. PHILIPS, M.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| NORTH CAROLINA STATE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on a multitude of motions to dismiss brought by

Defendants Debbie Meyer [DE-31]; Pitt County Memorial Hospital ("PCMH") [DE-33]; David

Creech and Jay Salsman [DE-35]; Paul Bolin and Ralph Whatley [DE-37]; Karen Zaner [DE-

40]; James Crouse [DE-41]; Nardine Guirguis [DE-45]; and by the State of North Carolina,

North Carolina Court System, and North Carolina Agency [DE-52]. Plaintiff Sherif Philips has

also filed a Motion for Rule 59 and Rule 60 [DE-70], which the court construes as a motion for

relief under those rules. For the reasons stated herein, all of the motions to dismiss [DE-31, -33, -

35, -37, -40, -41, -45] are ALLOWED. The motion for relief under Rules 59 and 60 [DE-70] is

DENIED.

I.     PROCEDURAL AND FACTUAL HISTORY

This is not the plaintiff's first trip to the rodeo. Indeed, the plaintiff has already filed three

previous lawsuits based on, essentially, the same facts. *See generally Philips v. Pitt Cnty. Mem.*

*Hosp.*, No. 4:07-CV-49-F (hereinafter "*Philips II*"); *Philips v. Pitt Cnty. Mem. Hosp. Inc.*, No.

4:05-CV-97-F (hereinafter "*Philips I*"); *Philips v. Pitt Cnty. Mem. Hosp., Inc.*, 731 S.E.2d 462

(N.C. Ct. App. 2012) (hereinafter "*Philips III*"). Indeed, the defendants in *Philips I*, *II*, and *III* also included Defendants PCMH, Bolin, and Whatley. However, apparently unhappy with the result in the previous litigation and believing it to be the result of discrimination, defamation, and fraud, Plaintiff Philips has now also added several North Carolina state defendants (the "State Defendants"), including the North Carolina court system, as well as his former lawyers and the lawyers who represented PCMH. Now without counsel, Philips has filed a complaint that, while rambling and excessive, essentially retreads the same facts that formed the basis for his claims in *Philips I*, *II*, and *III*. The court, in the interest of efficiency, and because the court cannot see a material difference in the facts after review of the complaint, repeats the facts as outlined in its orders dismissing *Philips I* and *II*. The court also briefly reviews the facts of *Philips III*.

### A. Philips I

Plaintiff Sherif is a doctor who became a member of PCMH's medical staff in 1996. In January 1998, Plaintiff contracted with Total Renal Care to provide Medical Services at a free-standing dialysis unit in eastern North Carolina. After Plaintiff was named in a malpractice lawsuit in connection with his work at Total Renal Care and was suspended at two other facilities for failure to maintain the requisite records, PCMH's Department of Risk Management began observation of Plaintiff's interaction with patients at PCMH.

On July 23, 2004, following the observation period, Plaintiff met with several PCMH administrators to discuss allegations that Plaintiff had falsified medical records. Plaintiff contends that he was not told who had made the allegations and did not receive written documentation describing the allegations. PCMH Chief of Service for Internal Medicine Dr. Whatley subsequently wrote a letter to then-PCMH Chief of Staff Dr. Barrier on August 26,

2004, indicating that he believed corrective action should be taken against Plaintiff for professional misconduct, including failing to examine patients and falsifying patient records.

On September 14, 2004, Dr. Barrier notified Plaintiff that a Request for Investigation prior to Corrective Action had been initiated and that he would be afforded an opportunity to appear before the Medical Executive Committee [MEC] of PCMH to respond to the allegations. Plaintiff contends that the letter did not identify the name of the individual requesting the investigation or the specific patients involved in the investigation and that such notice is required by the PCMH by-laws. Plaintiff met with the MEC on September 20, 2004. Thereafter, the MEC determined that further action was warranted and Dr. Whatley appointed an Ad Hoc Committee to investigate the allegations and report back to the MEC. Dr. Whatley selected Dr. Brown to act as chair of the Ad Hoc Committee.

Plaintiff appeared before the Ad Hoc Committee without the assistance of counsel and the Committee issued a report to the MEC on November 2, 2004, indicating that Plaintiff was not performing at the level required of PCMH medical staff. Accordingly, Plaintiff was given another opportunity to appear before the MEC on November 15, 2004. The MEC subsequently issued a report on November 16, 2004, adopting the conclusions and recommendations of the Ad Hoc Committee, but adding a recommendation for a six month suspension of Plaintiff's privileges.

On December 23, 2004, Plaintiff gave notice of his intent to appeal the MEC's decision and have a fair hearing pursuant to PCMH by-laws. For the appeal, a hearing was conducted before a panel consisting of Drs. John Olsson, Beverly Harris, and Sanjay Patel, in which Plaintiff was represented by counsel, cross-examined witnesses, and presented evidence. In a report dated April 4, 2005, the panel issued its Hearing Report to the MEC. The panel did not

3

recommend suspension of Plaintiff's privileges. Plaintiff did not appeal this decision to the Board of Trustees. The PCMH Board of Trustees then met on May 17, 2005, to discuss the issues raised in Plaintiff's fair hearing process. The Board of Trustees declined to accept the recommendations of the panel and decided to consider the matter further at a subsequent meeting. Plaintiff was notified of the decision and told that the Board of Trustees would not make a final decision until it received a recommendation from the Chief of Staff, Chief of Staff-Elect, Secretary of the Medical Staff and the Chairman of the Credentials Committee. The Board of Trustees met on June 22, 2005 and decided to reappoint Plaintiff to the medical staff for two years, but also imposed a 90 day suspension of Plaintiff's medical staff privileges, with 31 days of "active suspension." PCMH subsequently reported the Board's decision to the North Carolina Medical Board.

On July 29, 2005, Plaintiff initiated the *Philips I* against Defendants PCMH and Drs. Patel, Bolin, Whatley, and Brown, asserting claims pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1981 and alleging claims of breach of contract and defamation. Defendants filed a Motion to Dismiss on September 20, 2005, arguing that Plaintiff's 42 U.S.C. § 1983 and 42 U.S.C. § 1981 claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Additionally, Defendants contended that upon dismissal of Plaintiff's federal claims, his remaining state law claims should be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. The court allowed the motion and the case was dismissed.

**B.** *Philips II*

This case arises out of the suspension of Plaintiff Philips's medical privileges at PCMH. Plaintiff is a physician who became a member of PCMH's medical staff in 1996. On June 22,

2005, after an investigation and various hearings, the PCMH Board of Trustees renewed

Plaintiff's medical privileges subject to certain conditions and imposed a 90-day suspension of

Plaintiff's medical staff privileges, to include 31 days of "active suspension."

Dissatisfied with the manner in which his medical privileges were suspended, Plaintiff

filed a civil action ["*Philips I*"] in this court on July 29, 2005 against PCMH, Dr. Bolin, Dr.

Whatley and others, asserting: (1) a claim pursuant to 42 U.S.C. § 1983, based on deprivation of

a valuable property right without due process of law required by the Fourteenth Amendment;

(2) a claim pursuant to 42 U.S.C. § 1981, based on discrimination on the basis of national origin;

(3) breach of contract; and (4) defamation. *Philips v. Pitt County Memorial Hospital*, No. 4:05-

CV-95-F(3).

Thereafter, PCMH conducted an investigation and various hearings that ultimately

resulted in the activation of the remainder Plaintiff's 90-day suspension and permanent

suspension of his medical staff privileges due to his failure to abide by the conditions of the

renewal of his medical privileges. Plaintiff has alleged that a committee of four hospital

administrators met on November 17, 2005 and unanimously recommended to invoke the

remainder of Plaintiff's 90-day suspension for failure to comply with the disciplinary conditions

established by the Board of Trustees and possible summary suspension of Plaintiff's medical

privileges. Specifically, the recommendation was based upon Plaintiff's perceived failure to

remain within Pitt County while providing call coverage to PCMH patients, inappropriate

prescribing practices involving restricted antibiotics, inconsistent chart notes, and repeating

patterns of conduct associated with previous ongoing disciplinary action. Dr. Eric Lindbeck,

Chair of the Credentials Committee, then requested an investigation of Plaintiff prior to the

initiation of Corrective Action. On November 23, 2005, following the committee's

5

recommendation and Dr. Lindbeck's request, Dr. Lars Larsen, Chief of Staff, notified Plaintiff that his remaining 59 days of suspension would be invoked effective November 28, 2005.

On November 29, 2005, an Ad Hoc Committee met to hear the recommendations regarding invocation of the remaining 50 days of active suspension and summary suspension of all privileges. After the meeting, the Ad Hoc Committee recommended that the summary suspension remain in place. On December 5, 2005, the report of the Ad Hoc Committee was presented to the Medical Staff Executive Committee, which decided to uphold the adverse action. On December 5, 2005, PCMH filed two Adverse Action Reports with the National Practitioners' Data Bank regarding the remaining 59 days of active suspension and summary suspension of Plaintiff's privileges at PCMH.

Plaintiff timely gave notice of his intent to appeal the decision of the Medical Staff Executive Committee. A Fair Hearing Committee then met and heard evidence on April 11, 2006, May 15, 2006, and May 16, 2006. On October 2, 2006, the Fair Hearing Committee issued a report recommending permanent suspension of Plaintiff's PCMH medical staff privileges. Plaintiff appealed the Fair Hearing Committee's decision and the Medical Staff Executive Committee affirmed the recommendation of the Fair Hearing Committee. Plaintiff appealed the decision of the Medical Staff Executive Committee and the Board of Trustees affirmed the recommendation of permanent suspension of Plaintiff's medical privileges.

On March 19, 2007, Plaintiff initiated *Philips II*, again asserting a claim pursuant to 42 U.S.C. § 1983, and claims of breach of contract and defamation against Defendants PCMH and Drs. Bolin and Whatley. Defendants filed a Motion to Dismiss on May 10, 2007, arguing that Plaintiff's 42 U.S.C. § 1983 claim should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Additionally,

6

Defendants contended that upon dismissal of Plaintiff's federal claim, his remaining state law claims should be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. The court allowed the motion and dismissed the case.

### C. *Philips III*

The plaintiff brought a third lawsuit less than a month after the Fourth Circuit affirmed this court's order dismissing his federal case. That suit was based on the plaintiff's state claims for fraud, tortious interference with contract, breach of contract, defamation, injunctive relief, and punitive damages. *See Philips III*, 731 S.E.2d at 516. On August 21, 2012, the North Carolina Court of Appeals affirmed dismissal of all of the plaintiff's claims. *See id.* at 528. The Supreme Court of North Carolina denied a writ of certiorari and did not review the lower appellate court's decision. *See Philips v. Pitt Cnty. Mem. Hosp., Inc.*, 734 S.E.2d 862 (N.C. 2012).

### D. *Philips IV*

The plaintiff has returned, over half a decade later from his first federal attempts and five and a half years after his state attempt, for a *fourth* attempt. While his claims are, by and large, brought against the same defendants—PCMH, Bolin, and Whatley—he has also now included various State Defendants as well as the attorneys involved in the original litigation, both his own and those who represented PCMH.[1] While the court will not review the alleged facts of the latest complaint in great detail, the plaintiff's claims against the state defendants appear based on his displeasure with the legal rulings against him, legal rulings that were taken all the way to the Supreme Court of North Carolina. *See* Compl. [DE-1] at 24. Those claims include (1) Discrimination as to the State Defendants as well as Defendants PCMH, Bolin, and Whatley;

---

[1] The court further notes that those claims brought "against all defendants" only include facts as to Defendants PCMH, Bolin, and Whatley, and in claim 7, as to Defendants Creech, in addition to Defendants PCMH, Bolin, and Whatley.

(2) Antitrust as to PCMH and Stark Law;[2] (3) Whistleblower as to Defendants State of North

Carolina and PCMH;[3] (4) Fraud, Slander, Defamation, and Obstruction of Judgment against

Defendants Creech and Salsman; (5) Breach of Contract as to PCMH; (6) Tortious Interference

with Contract against all defendants; (7) Defamation and Fraud as to all defendants; (8) and (9)

Injunctive Relief and Punitive Damages against all defendants; and (10) Malpractice against his

past attorneys, Defendants Meyer, Zaner, Crouse, and Guirguis. The plaintiff filed his complaint

on March 10, 2015. *See* Compl. [DE-1]. All of the defendants have moved to dismiss on multiple

grounds.

## II.     LEGAL STANDARD

### A.  Rules 12(b)(1) and (2)

The State Defendants have moved to dismiss, in part, on grounds of governmental

immunity, pursuant to either Rule 12(b)(1) and (2). Under North Carolina law, governmental

immunity is a form of sovereign immunity, and as such, it raises an issue of jurisdiction. *Meyer*

*v. Walls*, 347 N.C. 97, 104, 489 S.E.2d 880, 884 (1997). The North Carolina Supreme Court has

not resolved whether governmental immunity challenges personal jurisdiction, as opposed to

subject matter jurisdiction. *See Teachy v. Coble Dairies, Inc.*, 306 N.C. 324, 326-28, 293 S.E.2d

182, 183-84 (1982); *Myers v. McGrady*, 360 N.C. 460, 465 n.2, 628 S.E.2d 761, 765 n.2 (2006)

(explaining that in *Teachy* the North Carolina Supreme Court "considered, but did not decide,

whether sovereign immunity is a matter of a personal or subject matter jurisdiction" and that

---

[2] The Stark Law, 42 U.S.C. § 1395nn, "was enacted to address overutilization of services by physicians who stood to profit from referring patients to facilities or entities in which they had a financial interest." *United States ex rel. Drakeford v. Tuomey Healthcare Sys., Inc.*, 675 F.3d 394, 397 (4th Cir. 2012). As it pertains to plaintiff's purported claim, the Stark Law does not provide a private right of action. *See United States ex rel. Rector v. Bon Secours Richmond Health Corp.*, No. 3:11-CV-38, 2014 WL 1493568, at *14 (E.D. Va. Apr. 14, 2014) (citing *United States ex rel. Villafane v. Solinger*, 543 F. Supp. 2d 678, 700 (W.D. Ky. 2008)).

[3] The plaintiff does not state an act or statute upon which his whistleblower claim is based.

since then that court "has simply referred to the sovereign immunity bar as fatal to 'jurisdiction' without further specification"). The North Carolina Court of Appeals, however, has determined that "sovereign immunity presents a question of personal jurisdiction, not subject matter jurisdiction." *Green v. Kearney*, 203 N.C. App. 260, 265, 690 S.E.2d 755, 760 (2010). Although the North Carolina Court of Appeals decisions are persuasive as to what the North Carolina Supreme Court would hold, and therefore indicate that this court should review the Defendants' motions under Rule 12(b)(2), this court will follow the lead of other federal district courts, and out of an abundance of caution, will consider the motion to dismiss on the basis of governmental immunity under both Rules 12(b)(1) and (2). *See Yarbrough v. E. Wake Charter Sch.*, __ F. Supp. 3d __, 2015 WL 3541347, at *3 (E.D.N.C. Feb. 24, 2015).

Rule 12 states that "if the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Rule 12(b)(1) challenges to the court's subject matter jurisdiction can take one of two forms: (1) an argument that the complaint's allegations, taken as true, do not support subject matter jurisdiction (a "facial challenge" to jurisdiction); or (2) an argument that the jurisdictional allegations in the complaint are not true ("factual challenge" to jurisdiction). *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). If the former, a plaintiff is afforded the same procedural protection he would receive under Rule 12(b)(6); in other words, the facts stated in the complaint must be taken as true, and "the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Id.* at 192. If, however, a defendant makes a factual attack, "the plaintiff bears the burden of proving the truth of such facts by a preponderance of the evidence." *United States ex rel. Vuyyuru v. Jadhav*, 555 F. 3d 337, 348-49 (4th Cir. 2009). "Unless 'the jurisdictional facts are intertwined with the facts central to the merits of the dispute,' the district court may then go

beyond the allegations of the complaint and resolve the jurisdictional facts in dispute by considering evidence outside the pleadings, such as affidavits." *Id.* (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)).

Similarly, under Federal Rule of Civil Procedure 12(b)(2), the party asserting personal jurisdiction has the burden to prove the existence of a ground for jurisdiction by a preponderance of the evidence. *Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005). "Where a challenge to personal jurisdiction is addressed only on the basis of motion papers, supporting legal memoranda, and the relevant allegations of the complaint, 'the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *Pan-American Prods. & Holdings, LLC v. R.T.G. Furniture Corp.*, 825 F. Supp. 2d 664, 676 (M.D.N.C. 2011) (quoting *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)). In that instance, the court "must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Combs*, 886 F.2d at 676. "[W]here the defendant provides evidence that denies the facts essential for jurisdiction, the plaintiff must present sufficient evidence to create a factual dispute on each jurisdictional element which has been denied by the defendant on which the defendant has presented evidence." *Pan-American*, 825 F. Supp. 2d at 676 (citing *Pinpoint IT Servs., L.L.C v. Atlas IT Export Corp.*, 812 F. Supp. 2d 710, 716-17 (E.D. Va. 2011); *Indus. Carbon Corp. v. Equity Auto & Equip. Leasing Corp.*, 737 F. Supp. 925, 926 (W.D. Va. 1990)). At this stage, if the court determines that a plaintiff has established a prima facie showing of personal jurisdiction, the court "will proceed as if it has personal jurisdiction over the matter, although factual determinations to the contrary may be made at trial." *Pinpoint*,

812 F. Supp. 2d at 717 (citing 2 James W. Moore et al., *Moore's Federal Practice* ¶ 12.31 (3d ed. 2011)).

## B. Rule 12(b)(5)

A court may dismiss an action for insufficient process of service pursuant to Federal Rule of Civil Procedure 12(b)(5). If service is contested, the plaintiff "bears the burden of establishing the validity" of service under Rule 4 of the Federal Rules of Civil Procedure. *O'Meara v. Waters*, 464 F. Supp. 2d 474, 476 (D. Md. 2006). "When there is actual notice, every technical violation of the rule or failure of strict compliance may not invalidate the service of process." *Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984). Even so, "the rules are there to be followed, and plain requirements for the means of effecting service of process may not be ignored." *Id.*

## C. Rule 12(b)(6)

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint, not to resolve conflicts of fact or to decide the merits of the action. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999). In considering a motion to dismiss, the court assumes the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). However, the "'[f]actual allegations must be enough to raise a right to relief above the speculative level' and have 'enough facts to state a claim to relief that is plausible on its face.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 n.26 (4th Cir. 2009) (alteration in original) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do."

*Twombly*, 550 U.S. at 555 (second alteration in original) (citations omitted). Moreover, a court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts.*, 213 F.3d at 180. The court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" when deciding a Rule 12(b)(6) motion. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## III.    DISCUSSION

The various defendants bring a multitude of reasons why this action should be dismissed. These reasons include (1) governmental immunity; (2) violations of Rule 8 and 10 of the Federal Rules of Civil Procedure; (3) failure to state a claim; (4) statutes of limitation and repose; and (5) *res judicata* and collateral estoppel, along with several other arguments.

As an initial matter, Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although the court must liberally construe a pro se complaint, the United States Supreme Court has made clear that a plaintiff must do more than make conclusory statements to state a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The plaintiff's allegations are conclusory, rambling, and disjointed. This is most evident with the plaintiff's whistleblower and antitrust claims—nowhere does the plaintiff state under which statute he brings those claims, leaving the defendants scrambling to name every possible defense to such claims. Therefore, the plaintiff's complaint is subject to dismissal for failure to comply with Rule 8(a) in that it does not include a "short and plain statement" of his claims.

12

Furthermore, all of the defendants argue that the plaintiff's claims should be dismissed for lack of proper service. The plaintiff does not contest that he improperly served the defendants, but instead states that he is not a lawyer, walks through the process he took to serve process, and states that he attempted service in good faith. While the plaintiff has failed to establish valid service, *O'Meara*, 464 F. Supp. 2d at 476, there appears to have been actual notice. *See Armco, Inc.*, 733 F.2d at 1089. Were this the only basis for dismissal, the court would be loath to dismiss the case on this basis alone. Indeed, if lack of proper service and failure to comply with Rule 8 were the only violations, the court would dismiss this case without prejudice to refile. However, these are not the only bases. A multitude of reasons remain showing that any amendment to the Complaint would be futile. Therefore, dismissal with prejudice is warranted. *See McLean v. United States*, 566 F.3d 391, 400 (4th Cir. 2009).

## A. Governmental Immunity and the State Defendants

The State Defendants must be dismissed as parties to this action. The State Defendants have moved to dismiss the plaintiff's complaint pursuant to Rules 12(b)(1), (2), (5), and (6) of the Federal Rules of Civil Procedure. More specifically, the State Defendants argue that dismissal is warranted based on (1) insufficient service of process; (2) the *Rooker-Feldman* doctrine; (3) the Eleventh Amendment of the United States Constitution; and (4) failure to state a claim. While all of these grounds provide a basis for dismissal, either in whole or in part, the clearest and most definitive grounds is governmental immunity.

Under the Eleventh Amendment of the United States Constitution, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court has held this

prohibition to mean that "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). There are only two exceptions to governmental immunity under the Eleventh Amendment: suits against a state or state agency are barred except (1) where the state agency has waived its immunity, or (2) where Congress has overridden that immunity. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989). The Complaint contains no allegations that sovereign immunity has been waived in this instance and the State of North Carolina has not otherwise waived its immunity. Therefore, the plaintiff's claims against the State Defendants are barred by the Eleventh Amendment and are hereby DISMISSED. Because the court dismisses the plaintiff's claims against the State Defendants on this basis, the court does not reach the State Defendants' other arguments. The State Defendants are dismissed as parties to this action.

### B. Res Judicata

The plaintiff's first claims must be dismissed in its entirety based on the doctrine of *res judicata*. "Res judicata precludes the assertion of a claim after a judgment on the merits in a prior suit by parties or their privies based on the same cause of action." *Meekins v. United Transp. Union*, 946 F.2d 1054, 1057 (4th Cir. 1991) (citing *Harnett v. Billman*, 800 F.2d 1308, 1312 (4th Cir. 1986)). "Not only does res judicata bar claims that were raised and fully litigated, it 'prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding.'" *Peugeot Motors of Am., Inc. v. E. Auto Distribs., Inc.*, 892 F.2d 355, 359 (4th Cir. 1989) (quoting *Nash Cnty. Bd. of Ed. v. Biltmore Co.*, 640 F.2d 484, 486 (4th Cir.), *cert. denied*, 454 U.S. 878 (1981). The party invoking *res judicata* must establish "(1) a final judgment on the merits in a prior suit, (2) an identity of the cause of action in both the earlier and the later suit, and (3) an

identity of parties or their privies in the two suits." *Meekins*, 946 F.2d at 1057-58 (quoting *Keith v. Aldridge*, 900 F.2d 736, 739 (4th Cir. 1981)).

Here, the plaintiff brought discrimination claims under § 1981 against Defendants PCMH, Bolin, and Whatley in *Philips I*. The court reached a final judgment on the merits on that claim, dismissing the § 1981 claim against the parties and dismissing the case in its entirety.[4] The doctrine of *res judicata* bars the plaintiff's present discrimination claim under § 1981 as to Defendants PCMH, Bolin, and Whatley. Because the State Defendants have already been dismissed as parties to this action, the plaintiff's First Cause of Action is DISMISSED in its entirety. Similarly, in *Philips III*, a final judgment was reached dismissing the plaintiff's claims for fraud, tortious interference with contract, breach of contract, defamation, injunctive relief, and punitive damages. The plaintiff had brought those claims as to PCMH, Bolin, and Whatley. Accordingly, the plaintiff's Fourth,[5] Fifth, Sixth, Seventh, Eighth, and Ninth Causes of Action are DISMISSED as barred by *res judicata*.

## C. Statutes of Limitations

Many of the plaintiff's claims are barred by the statute of limitations. This is unsurprising given that this matter was already litigated twice, resulting in two dismissals that occurred more than eight years ago. However, because of the plaintiff's failure to comply with Rule 8 of the Federal Rules of Civil Procedure, the defendants have at times had difficulty choosing the correct statute of limitations to apply. Still, the statute of limitations, in whole or in part, bars the plaintiff's claims for (1) discrimination, (2) antitrust, (3) whistleblower, (4) defamation, (5) tortious interference with contract, (6) fraud, (7) breach of contract, and (8) malpractice.

---

[4] Indeed, when the court dismissed the plaintiff's original § 1981 claim, the plaintiff conceded that he had not stated a cognizable claim. *See Philips I*, Order of August 2, 2007 [DE-57] at 13.

[5] Defendants Salsman and Creech represented PCMH, Whatley, and Bolin in *Philips I*, *II*, and *III*, and are in privity with those defendants as it pertains to the Fourth Cause of Action.

With the exception of the malpractice claims, the facts underlying the other causes of action terminated, *at the very latest*, before the filing of *Philips III* in state court on August 12, 2009. Even using that generous date for all but the malpractice claims, the present lawsuit was filed on March 10, 2015, meaning that a statute of limitations would have to be longer than five years and approximately nine months for a claim to survive. All of the aforementioned claims have statutes of limitations ranging from one to four years in length.

Discrimination under § 1981 is subject to a four year statute of limitations. *See James v. Circuit City Stores, Inc.*, 370 F.3d 417, 421 (4th Cir. 2004) (citing *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 381 (2004)). Under 15 U.S.C. § 15b, there is a four year statute of limitation on certain antitrust claims, though the plaintiff is not clear under which statute he is attempting to bring his antitrust claim. Under the False Claims Act, there is a three year statute of limitations and six year statute of repose on whistleblower claims. *See* 31 U.S.C. § 3731(b). However, as with the plaintiff's antitrust claim, it is unclear under what statute he is attempting to bring his whistleblower claim. North Carolina has a three year statute of limitations for claims breach of contract, tortious interference with contract, and fraud. *See* N.C. Gen. Stat. § 1-52(1) (fraud); § 1-52(5) (tortious interference); § 1-52(9) (fraud). North Carolina has a one year statute of limitations for defamation claims. *See id.* § 1-54(3). The plaintiff's claims for (1) discrimination, (2) antitrust, at least in part, (3) whistleblower, at least in part, (4) defamation, (5) tortious interference with contract, (6) fraud, and (7) breach of contract, are all barred by their corresponding statutes of limitations.

The only arguably close case is the plaintiff's claim for malpractice against Defendants Guirguis and Crouse, who represented the plaintiff in his state appellate proceedings. North Carolina has a three year statute of limitations on claims of professional malpractice. *See* N.C.

Gen. Stat. § 1-15(c). The malpractice claims against Guirguis and Crouse, even assuming, *arguendo*, that the complaint states a claim for malpractice, began to run, at the latest, when they filed the plaintiff's appellate brief on February 28, 2012. However, that date still falls more than three years before the filing of the complaint in the present case. The plaintiff attempts to signal events involving Defendant Guirguis after March 10, 2012, but does not allege that any of those events constituted malpractice, nor are those events pled in his complaint, despite the complaint's length. Defendant Guirguis, on the other hand, cites compelling case law with similar facts. *See K.A. Holdings, Ltd. of N.Y. v. Chagaris*, No. , 2012 WL 1165333, at *7-8 (W.D.N.C. Feb. 27, 2012) (dismissing a claim for malpractice where the claims were brought more than three years after the filing of the appellate brief). Therefore, the plaintiff's malpractice claims against Defendants Guirguis and Crouse are barred by the statute of limitations. Moreover, as to Defendant Zaner, her work on the plaintiff's behalf ended even before that of Defendants Guirguis and Crouse. The statute of limitations also bars the plaintiff's malpractice claim as to her. Finally, as to Defendant Meyer, she withdrew from her representation of the plaintiff on June 27, 2010. Not only is the plaintiff's malpractice claim against her barred by the statute of limitations, it is also barred by the four year statute of repose. *See* N.C. Gen. Stat. § 1-15(c).

### D. Other Arguments and Parting Thoughts

Because the court already concludes that dismissal with prejudice is warranted based on the foregoing reasons, the court has not reached several of the defendants' arguments. In the court's view, but without holding so, it also appears that the defendants' arguments that the complaint fails to state a claim, indeed any claim, would also prevail. This logic of this reasoning

is strengthened by the fact that many of these claims have already failed at least once in either federal or state court.

The plaintiff has already lost at multiple stages of proceedings, from PCMH's provisional suspension of his medical privileges, to the state trial and appellate courts, and to this court, the Fourth Circuit, and the Supreme Court of the United States. He is assuredly frustrated, as his complaint shows. However, the mere fact that he is unsatisfied with a past result does not provide the basis for bringing suit against every party involved. Indeed, in some cases, courts have sanctioned parties for bringing frivolous actions, and Defendant Meyers has moved the court to so sanction the plaintiff. The court will not, at this time, sanction the plaintiff. However, the court warns the plaintiff that if he brings this suit again to this court, the court will award costs and attorney's fees to any party who moves for and merits such costs and fees.

The defendants' motions to dismiss are ALLOWED. The plaintiff's claims are DISMISSED WITH PREJUDICE. *See McLean v. United States*, 566 F.3d 391, 400 (4th Cir. 2009) (holding that dismissal with prejudice is proper where a complaint is incurable through amendment).

## IV.    CONCLUSION

For the foregoing reasons, all of the motions to dismiss [DE-31, -33, -35, -37, -40, -41,-45 -52] are ALLOWED. The plaintiff's claims are DISMISSED WITH PREJUDICE in their entirety. The motion for relief under Rules 59 and 60 [DE-70] is DENIED. The Clerk of Court is DIRECTED to close this case. SO ORDERED. This, the 28 day of December, 2015.

_____
JAMES C. FOX
Senior United States District Judge